UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AJIN JARBAR DURR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:23-cv-00915-SGC |
| ) | |
| PIGGLY WIGGLY ALABAMA ) | |
| DISTRIBUTING COMPANY, INC., ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION & ORDER[1]

This is an employment discrimination action brought by Ajin Jarbar Durr against Piggly Wiggly Alabama Distributing Company, Inc. ("Piggly Wiggly ADC").[2] The case is before the court on Piggly Wiggly ADC's motion for summary judgment and related requests. (Doc. 38).[3] For the reasons stated below, the court will deny Piggly Wiggly ADC's summary judgment motion. The court also addresses below the requests related to the summary judgment motion.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 14).

[2] Durr initially was represented by counsel but now proceeds *pro se.*

[3] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

I.	**Standard of Review**

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he [district] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the record the party believes demonstrate the absence of a genuine dispute of material fact. *Celotex Corp.*, 477 U.S. at 323. If the moving party carries its initial burden, the non-movant must go beyond the pleadings and come forward with evidence showing there is a genuine dispute of material fact for trial. *Id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Id.* at 248. If the evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Id.* at 249-50 (internal citations omitted). All reasonable doubts about the facts should be resolved in favor of the non-movant, and all justifiable inferences should be drawn in the non-movant's favor. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

II.     **Summary Judgment Facts**[4]

Piggy Wiggly ADC supplies groceries and other products to independent grocers throughout the Southeast. (Doc. 40-1 at 2). Durr worked as an order selector in Piggly Wiggly ADC's Bessemer, Alabama, distribution facility from January 2015 until his discharge on July 15, 2021. (Doc. 40-1 at 2).

Piggly Wiggly ADC order selectors are required to meet minimum daily and weekly productivity standards. (Doc. 40-1 at 3). They must average 148.75 cases per hour per day and 175 cases per hour per week. (Doc. 40-1 at 3). An order selector who does not meet either standard – a failure also referred to as "restricting output" – is subject to discipline consistent with Piggly Wiggly ADC's progressive discipline policy. (Doc. 40-1 at 3, 56-59). The progressive discipline policy allows for flexibility but provides that discharge generally is the disciplinary measure of last resort, to be implemented when an employee has failed to correct an issue after warning(s), probation, and/or suspension. (Doc. 40-1 at 56-57).

Durr failed to meet the minimum daily productivity standard on at least four occasions within the nine-month period preceding July 15, 2021.[5] Piggly Wiggly

---

[4] The following facts are undisputed, unless otherwise noted. The court views the facts in the light most favorable to Durr, as the non-movant, and gives Durr the benefit of all reasonable inferences.

[5] The record documenting Durr's discharge states Durr failed to meet the minimum daily productivity standard five, not four, times in less than nine months. (Doc. 40-1 at 72). Piggly Wiggly ADC seems to acknowledge that was a misstatement, and Durr has conceded that whether he failed to meet the minimum daily productivity standard five or, instead, four times is immaterial to his claims. (Doc. 39 at 7-8; Doc. 40-1 at 4; Doc. 40-2 at 23-25).

ADC issued Durr a verbal warning on the first occasion, issued Durr a written warning on the second occasion, suspended Durr on the third occasion, and then discharged Durr after his fourth failure to meet the minimum daily productivity standard. (Doc. 40-1 at 62, 64, 68, 72).[6] In a disciplinary record created contemporaneously with Durr's discharge, Piggly Wiggly ADC identifies Durr's failures to meet the minimum daily productivity standard as the reason for his discharge. (Doc. 40-1 at 72). An affidavit submitted by Piggly Wiggly ADC's Human Resources Manager with its summary judgment motion also identifies Durr's failures to meet the minimum daily productivity standard as the reason for his discharge. (Doc. 40-1 at 4).

Durr challenged his discharge as race discrimination. First, he filed a grievance under a collective bargaining agreement. After the Director of Human Resources for Piggly Wiggly ADC denied the grievance, an independent arbitrator found in favor of Piggly Wiggly ADC. (Doc. 8 at 6; Doc. 40-2 at 97-102). Next, Durr filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC"). (Doc. 8-1). The EEOC made no determination regarding the merits of the charge and notified Durr of his right to file a lawsuit. (Doc. 8-1). Durr thereafter commenced this action, asserting claims Piggly Wiggly

---

[6] Although Piggly Wiggly ADC suspended Durr, it did not require Durr to serve the suspension. (Doc. 40-1 at 4, 68).

ADC discriminated against him based on his race when it discharged him and denied his grievance. (Doc. 8 at 9-15). He brings these claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981. (Doc. 8 at 1, 9-16). He requests a jury trial. (Doc. 8 at 1, 16).

Durr does not dispute he ran afoul of the minimum daily productivity standard on multiple occasions within the nine months preceding his discharge. (Doc. 8 at 4). He alleges in his amended complaint, which is the operative pleading, that Piggly Wiggly ADC subjected him to harsher discipline than five Hispanic order selectors – Jordi Cruz, Johnny Ruiz, Kevin Garcia, Martin Fernandez, and Darwin Cruz – who failed to meet the minimum daily and/or weekly productivity standard within a nine-month period. (Doc. 8 at 4-6). He contends the five Hispanic order selectors were not discharged or even disciplined at all for the same conduct. (Doc. 8 at 4-6). Durr further alleges he was not the only Black order selector discharged ostensibly for failing to meet the minimum daily and/or weekly productivity standard: Piggly Wiggly ADC discharged five other Black order selectors for restricting output around the time of his own discharge. (Doc. 8 at 6).

Counsel for Piggly Wiggly ADC deposed Durr in connection with this action. Counsel asked Durr whether he knew Jordi Cruz's daily production average. (Doc. 40-2 at 28). Durr responded, "I – I know according to, you know, the evidence and just by, you know, working with him – him and the others I mentioned, and there's

5

– there's some more that I didn't get the names, but they missed daily minimum and weekly average as well so . . . ." (Doc. 40-2 at 28). Counsel followed up by pressing Durr whether he knew the "exact" daily production averages of Jordi Cruz, Ruiz, Garcia, Fernandez, or Darwin Cruz. (Doc. 40-2 at 28-29). Durr responded, "No." (Doc. 40-2 at 29). Counsel also pressed Durr whether he knew the "exact" weekly production averages of the five Hispanic order selectors. (Doc. 40-2 at 29). Durr responded, "Not the exact. I just know some of them." (Doc. 40-2 at 29).

Counsel then asked Durr whether he knew of disciplinary actions Piggly Wiggly ADC took against any of the five Hispanic order selectors for failing to meet the minimum daily or weekly productivity standard. (Doc. 40-2 at 29-30). Durr responded, "Not other than the ones that I've actually listed in the – the discovery." (Doc. 40-2 at 30). Counsel asked Durr whether he knew the dates of any such disciplinary action or possessed any relevant disciplinary reports. (Doc. 40-2 at 30). Durr responded, "Not outside of what I've already presented." (Doc. 40-2 at 30). Counsel finally asked Durr whether he knew of any adverse action Piggly Wiggly ADC took against any of the five Hispanic order selectors. (Doc. 40-2 at 30). Durr responded, "No." (Doc. 40-2 at 31).

Piggly Wiggly ADC filed its summary judgment motion on October 24, 2024. (Doc. 38). Durr filed his response to the motion on November 18, 2024, four days late. (Doc. 42; *see also* Doc. 41). Contained within the response is a request that

the court defer consideration of the summary judgment motion while Durr attempts to obtain additional discovery. (Doc. 42 at 3-4). Piggly Wiggly ADC filed a motion to strike Durr's response as untimely and requested that, in the alternative, the court afford it an extension of time until December 2, 2024, to file its reply brief. (Doc. 43). Piggly Wiggly ADC then timely filed a reply brief on November 27, 2024, thereby effectively mooting its request for an extension. (Doc. 44). Included with the reply are evidentiary objections to the affidavit Durr attached to his response to Piggly Wiggly ADC's summary judgment motion. (Doc. 44 at 2-5).

## III. Discussion

Title VII and § 1981 protect against race-based employment discrimination. *Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1336 (11th Cir. 2024). Courts often evaluate Title VII race-based disparate treatment claims and § 1981 race discrimination claims together, using the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Poer*, 100 F.4th at 1336.[7] The *McDonnell*

---

[7] The *McDonnell Douglas* framework applies only where a plaintiff relies on circumstantial, as opposed direct, evidence to establish his claim, *Taylor v. Runyon*, 175 F.3d 861, 867 n.2 (11th Cir. 1999), and proceeds under a single-motive, as opposed to mixed-motive, theory of discrimination, *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1236-40 (11th Cir. 2016). Moreover, the *McDonnell Douglas* framework "is not the *sine qua non*" for a plaintiff to survive summary judgment in relation to a discrimination claim based on circumstantial evidence. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013). "Instead, 'the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent.'" *Id.* (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 1328 (11th Cir. 2011). "A triable issue of fact exists 'if the record, viewed in the light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Id.* (quoting *Smith*, 644 F.3d at 1328). Durr relies on circumstantial, as opposed to direct, evidence and, while it is unclear whether

7

*Douglas* framework requires a plaintiff first to establish a *prima facie* case of race discrimination by showing (1) he is a member of a protected class, (2) he was qualified for the position he held, (3) his employer subjected him to an adverse employment action, and (4) his employer treated a similarly situated employee outside his protected class (a "comparator") more favorably. *Id.* If the plaintiff establishes a *prima facie* case of race discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the defendant articulates a legitimate, non-discriminatory reason for the adverse employment action, the burden returns to the plaintiff to show the proffered reason is a pretext for discrimination. *Id.*

The plaintiff's burden at the third stage of the *McDonnell Douglas* framework "merges with [his] ultimate burden of persuading the factfinder that [he] has been the victim of intentional discrimination." *McCreight v. AuburnBank*, 117 F.4th 1322, 1335 (11th Cir. 2024) (internal quotation marks omitted). The plaintiff must come forward with evidence from which a reasonable jury could infer the reason proffered by the defendant for the adverse employment action is false. *Poer*, 100 F.4th at 1336. In the case of a single-motive theory Title VII claim, the plaintiff also

---

he proceeds under a single-motive or mixed-motive theory of discrimination, his ability to proceed under a single-motive theory using the *McDonnell Douglas* framework is the only question Piggly Wiggly ADC presents to the court in its summary judgment motion.

must come forward with evidence from which a reasonable jury could infer the plaintiff's race was the "single, true reason" for the adverse employment action. *Quigg*, 814 F.3d at 1235, 1237-38 (internal quotation marks omitted). By contrast, in the case of a race discrimination claim proceeding under § 1981, the plaintiff must come forward with evidence from which a reasonable jury could infer the plaintiff's race was a "but-for cause" of the adverse employment action. *Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1014 (11th Cir. 2023). The § 1981 causation standard "does not require [a plaintiff] to prove that race [or some other protected characteristic] was the *exclusive* cause of his termination [or some other adverse employment action], but it does require him to prove that but for his race he would not have been terminated." *Id.*

Importantly here, evidence the defendant's proffered reason for an adverse employment action is false may permit an inference of discriminatory intent, although it does not compel the inference and, in some cases, does not support it. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1528-29, 1532, 1537-38 (11th Cir. 1997); *Chapman v. AI Transport*, 229 F.3d 1012, 1025 n.11 (11th Cir. 2000).[8] Provided there is more than "a weak issue of fact" as to the veracity of the proffered

---

[8] For example, notwithstanding evidence the proffered reason is false, the defendant would be entitled to summary judgment if the record " 'conclusively reveals'" some other, non-discriminatory basis for the adverse employment action or if the plaintiff has " 'created only a weak issue of fact'" as to the veracity of the proffered reason and there is " 'abundant and uncontroverted independent evidence'" no discrimination occurred. *Chapman*, 229 F.3d at 1025 n.11 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

reason and that "abundant and uncontroverted independent evidence" no discrimination occurred is lacking, summary judgment is inappropriate. *See Combs*, 106 F.3d at 1532; *Chapman*, 229 F.3d at 1025 n.11. In such a case, "the court may not preempt the jury's role of determining whether to draw an inference of intentional discrimination from the plaintiff's *prima facie* case taken together with rejection of the employer's explanations for its action." *Combs*, 106 F.3d at 1538. Whether to draw the inference is guided by "assess[ment] [of] the credibility of witnesses through observation of trial testimony and [] weighing the evidence – tasks peculiarly within the province of the jury." *Id.*

### A. Discriminatory Discharge Claims

Piggly Wiggly ADC makes three arguments for summary judgment in its favor on Durr's discriminatory discharge claims brought under Title VII and § 1981.

#### 1. Comparator Evidence

Piggly Wiggly ADC first contends Durr's discriminatory discharge claims fail on the fourth element of his *prima facie* case. (Doc. 39 at 12). To be a proper comparator, an employee outside a plaintiff's class who received more favorable treatment from an employer must be similarly situated to the plaintiff "in all material respects." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1218 (11th Cir. 2019). The "in all material respects" standard ordinarily requires that the comparator "have engaged in the same basic conduct (or misconduct) as the plaintiff," "have been

subject to the same employment policy, guideline, or rule as the plaintiff," "have been under the jurisdiction of the same supervisor as the plaintiff," and "share the plaintiff's employment or disciplinary history." *Id.* at 1227-28. Piggly Wiggly ADC contends Jordi Cruz, Ruiz, Garcia, Fernandez, and Darwin Cruz are not proper comparators because Durr testified he has no knowledge of their daily or weekly production averages, performance-related issues, or disciplinary histories. (Doc. 39 at 12).

The contention is a mischaracterization. A fair reading of Durr's testimony regarding the productivity of the five Hispanic order selectors, appropriately viewed in the light most favorable to Durr, is that Durr does not know the exact number of cases per hour per day or per week each proposed comparator averaged but that he knows of occasions where those averages fell below the minimum daily and weekly productivity standards. (*See* Doc. 40-2 at 28-29). Durr flatly did not testify he lacks any knowledge of the proposed comparator's disciplinary history. He testified he does not know details of those histories outside of the information he already has given to Piggly Wiggly ADC's counsel during discovery. (*See* Doc. 40-2 at 29-30). The court is unaware of the discovery information Durr references but notes Durr alleges in his amended complaint that Piggly Wiggly ADC disciplined Jordi Cruz, Garcia, Fernandez, and Darwin Cruz multiple times for excessive breaks. (Doc. 8 at 7-8). These allegations are not necessarily inconsistent with Durr's testimony he

11

does not know of any adverse action Piggly Wiggly ADC took against any of the five Hispanic order selectors because not all discipline qualifies as an adverse action. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, (2006) ("[N]ot all conduct by an employer negatively affecting an employee constitutes an adverse employment action."). The term "adverse action" or "adverse employment action" is a legal conclusion identifying an action that effects "a *serious and material* change in the terms, conditions, or privileges of employment." *Id.* at 1239. Moreover, Durr's testimony he does not know of any adverse action Piggly Wiggly ADC took against any of the five Hispanic order selectors does not undermine his claims. It supports them. An element of Durr's discriminatory discharge claims is that Piggly Wiggly ADC treated the proposed comparators more favorably than Durr insofar as it did not subject them to discharge – discipline that inarguably qualifies as an adverse action – for failing to meet the minimum daily or weekly productivity standard.

### 2. Pretext

Piggly Wiggly ADC next argues that, even assuming Durr can establish a *prima facie* case of disparate treatment, it has articulated a legitimate, non-discriminatory reason for discharging him – repeated disciplinary infractions – that he cannot rebut. (Doc. 39 at 12-15). A plaintiff may demonstrate pretext "by

revealing such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [a defendant's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007) (internal quotation marks omitted). The showing may be made using evidence offered initially to establish a *prima facie* case, *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004), *abrogated on other grounds by Lewis*, including comparator evidence, *Smelter v. S. Home Care Servs., Inc.*, 904 F.3d 1276, 1291-92 (11th Cir. 2018).

The repeated disciplinary infractions Piggly Wiggly ADC references are the at least four occasions on which Durr failed to meet the minimum daily productivity standard and seven occasions on which Durr violated other work rules. (Doc. 39 at 13). The legitimacy of Durr's failures to meet the minimum daily productivity standard as a reason for discharging him is called into question by Durr's testimony discussed above. Evidence Piggly Wiggly ADC did not discharge five Hispanic order selectors who failed repeatedly to meet the minimum daily productivity standard would allow a reasonable factfinder to conclude it unworthy of credence that Piggly Wiggly discharged Durr because he failed repeatedly to meet the minimum daily productivity standard.

The seven additional work rule violations are weak reasons supporting Piggly

Wiggly ADC's decision to discharge Durr. Piggly Wiggly ADC did not identify them as a basis of the decision in the disciplinary record it created contemporaneously with Durr's discharge. It identified only the failures to meet the minimum daily productivity standard as the basis of the decision. (Doc. 40-1 at 72). An employer is not necessarily bound by the explanation for a discharge decision it offers to an employee at the time of discharge. Although inconsistent or shifting explanations for a discharge decision may suggest pretext, an employer may offer a reason for discharging an employee in addition to the one articulated to the employee at the time of discharge if the reasons are consistent. *Bechtel Const. Co. v. Sec'y of Labor*, 50 F.3d 926, 935 (11th Cir. 1995); *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998); *Walker v. St. Joseph's/Candler Health Sys., Inc.*, 506 F. App'x 886, 889 (11th Cir. 2013). Here, however, Piggly Wiggly ADC has not offered evidence Durr's seven work rule violations apart from restricting output were additional reasons for his discharge. Counsel for Piggly Wiggly ADC has made the assertion in a brief supporting the defendant's summary judgment motion. However, assertions made by counsel in briefs are not evidence, *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980),[9] and the assertion made in this case is not accompanied by, for example, the affidavit of a corporate representative with

---

[9] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

personal knowledge of the decision-making process behind Durr's discharge. The court notes the affidavit submitted by Piggly Wiggly ADC's Human Resources Manager attributes Durr's discharge to the occasions on which he restricted output and not anything else. (Doc. 40-1 at 4). The seven additional work rule violations amount to no more than post-hoc justifications offered by counsel.

### 3. § 1981 Causation Standard

Piggly Wiggly finally asserts that, irrespective of its other arguments, Durr's § 1981 claim fails because Durr cannot show his race was the but-for cause of his discharge, as opposed to merely a motivating factor. (Doc. 39 at 17). As an initial matter, the court is not convinced the but-for standard of causation applicable to Durr's § 1981 claim is more onerous that the standard of causation applicable to his Title VII claim.[10] However, that doubt is of no consequence here. Regardless of the relative demand of the standard of causation applicable to a § 1981 claim, whether

---

[10] A Title VII claim proceeding under a mixed-motive theory of discrimination requires only that the plaintiff's race have been a "motivating factor" for the adverse employment action challenged, "even though other [legitimate] factors also motivated the action," *Quigg*, 814 F.3d at 1235 (internal quotation marks omitted), and that standard of causation is "lesser" or "more forgiving" than the but-for standard of causation applicable to a § 1981 claim, *Ossmann*, 82 F.4th at 1014; *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1192 (11th Cir. 2024). However, as stated, a Title VII claim proceeding under a single-motive theory of discrimination requires that the plaintiff's race have been the "single, true reason" for the adverse employment action challenged. *Quigg*, 814 F.3d at 1235, 1237-38 (internal quotation marks omitted). The standard of causation applicable to a single-motive theory Title VII claim as articulated in *Quigg* would seem to be more onerous than the but-for standard of causation applicable to a § 1981 claim, which the Eleventh Circuit has explained does not require that race have been the "exclusive cause" of a plaintiff's discharge. *See Ossmann*, 82 F.4th at 1014. However, the Eleventh Circuit also has equated *Quigg's* articulation of the causation standard applicable to a single-motive theory Title VII claim with a but-for standard of causation. *See McCreight*, 117 F.4th at 1331-32.

Durr has met the standard is a question for the factfinder, which in this case is a jury, and not the court. The evidence of record creates more than a weak fact issue regarding the veracity of Piggly Wiggly ADC's proffered reason for discharging Durr, and the court has not located in the record abundant and uncontroverted evidence no discrimination occurred. As a result, the jury and not the court must assess the credibility of witnesses and weigh the evidence and then determine whether to draw an inference of intentional discrimination. *See Combs*, 106 F.3d at 1528-29, 1532, 1537-38; *Chapman*, 229 F.3d at 1025 n.11.

### B.  Denial of Grievance Claim

Piggly Wiggly ADC largely confines its arguments to Durr's Title VII and § 1981 claims for discriminatory discharge. However, it also seeks summary judgment in its favor on Durr's claims it violated Title VII and § 1981 when its Director of Human Resources denied Durr's grievance. The extent of its argument supporting the request is the assertion the grievance was denied for the same reason Durr was discharged in the first place – Durr's failure to meet the minimum daily productivity standard on at least four occasions. (Doc. 39 at 18). In other words, Piggly Wiggly ADC contends its Director of Human Resources properly denied Durr's grievance because Durr was fired for a legitimate, non-discriminatory reason. However, as discussed, there is a question of fact for the jury as to the veracity of the legitimate, non-discriminatory reason Piggly Wiggly ADC proffers for

discharging Durr. This, in turn, calls into question the veracity of the reason Piggly Wiggly ADC proffers for denying Durr's grievance. There may be other arguments based on which Durr's Title VII and § 1981 claims related to the denial of his grievance would fail. However, Piggly Wiggly ADC has not made them, and the court will not make them for the defendant. *See Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) ("There is no burden upon the district court to distill every potential argument that could be made based on the material before it on summary judgment. Rather, the onus is upon the parties to formulate arguments.") (internal quotation marks omitted).

### C. Related Requests

Piggly Wiggly ADC's summary judgment motion is due to be denied because, with respect to each of Durr's claims, it failed to carry its initial burden of identifying portions of the record demonstrating the absence of a genuine dispute of material fact. Because Piggly Wiggly ADC failed to carry its initial burden on summary judgment, consideration of Durr's response and accompanying affidavit was unnecessary. Therefore, Piggy Wiggly ADC's motion to strike the response and objection to consideration of the affidavit are due to be denied and overruled, respectively, as moot. Durr's request that the court defer consideration of the summary judgment motion while he attempts to obtain additional discovery likewise is due to be denied as moot. Durr did not need to offer any evidence on his claims

to survive Piggly Wiggly ADC's summary judgment motion. Therefore, additional evidence obtained through an extended discovery process could not benefit him for purposes of this stage of the litigation.

## IV. Conclusion

For the reasons stated above, the court **DENIES** the motion for summary judgment (Doc. 38) filed by Piggly Wiggly ADC. The court **DENIES** as **MOOT** the motion to strike (Doc. 43) filed by Piggly Wiggly ADC and **OVERRULES** as **MOOT** its objections (Doc. 44 at 2-5) to Durr's affidavit. The court also **DENIES** as **MOOT** the request for deferred consideration of Piggly Wiggly ADC's summary judgment motion (Doc. 42 at 3-4) made by Durr.

**DONE** this 9th day of June, 2025.

_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE